IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-11110
Summary Calendar

_____


HERMAN E. MITCHELL,

                                        Plaintiff-Appellant,

        versus


ALLSTATE LIFE INSURANCE COMPANY,

                                        Defendant-Appellee.


_____

Appeal from the United States District Court for the
Northern District of Texas, Dallas
(3:94-CV-1562-R)

_____

March 14, 1997
Before GARWOOD, JOLLY and DENNIS, Circuit Judges.[*]

PER CURIAM:

        Plaintiff-appellant Herman E. Mitchell (Mitchell) appeals the

district court's summary judgment dismissal, on the basis of

limitations and res judicata, of his fraud suit against defendant-

appellee Allstate Life Insurance Company (Allstate).  We affirm,

being essentially in agreement with the reasoning of the district

_____

        [*]Pursuant to Local Rule 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

court.

Mitchell's instant suit asserts that Allstate committed fraud by not including in the group long term disability insurance policy issued by Allstate in the spring of 1988 to Mitchell's employer, Herring Marathon Group, Inc. (Herring), a "Presumptive Disability Benefit based on a 50% loss of earnings basis" that Allstate's written proposal furnished to John O'Leary (O'Leary), the independent broker assisting Herring in purchasing its insurance, had said would be included, and which O'Leary had accordingly informed Herring and Mitchell, Herring's Chief Financial Officer and Vice President for Administration who "was in charge of procuring" the policy for Herring, would be provided.

On May 9, 1988, Mitchell, on behalf of Herring, wrote Allstate requesting that a change be made in the policy definition of disability to be "own occupation."

Allstate subsequently transferred all its disability benefits business to Metropolitan Life Insurance Company (Metropolitan). Thereafter, in June 1989, Mitchell filed with Metropolitan a claim for disability benefits under the policy because of eye problems. Metropolitan denied the claim August 11, 1990.  Mitchell, by his August 18, 1989, letter to Metropolitan, enclosed a copy of the policy definition of disability and said he met it.  Metropolitan responded by its letter of August 23, 1989, in substance advising that the enclosure to Mitchell's August 18 letter was correct, but that Mitchell did not meet the definition.  Mitchell in his

September 25, 1989, letter to Metropolitan stated that "[a]fter review of the policy and your previous letter" he did not understand why his claim was denied.[1]  Mitchell then retained counsel, who wrote Metropolitan about the claim, but Metropolitan again denied it on February 2, 1990.

Mitchell filed suit against Allstate and Metropolitan in June 1990 (the "first suit") seeking to recover on the policy, and also making a general claim of fraud against Allstate.  The case was removed to the United States District Court for the Eastern District of Texas.  In an order entered October 11, 1991, the district court ruled that the case was governed by ERISA and Mitchell would not be entitled to a jury trial *except* on his "cause of action for fraud in the sale of the insurance policy by Allstate Life Insurance Company.  To the extent that plaintiff has adequately pled such a cause of action and that it survives defendants' motions for summary judgment, plaintiff will be entitled to a jury trial on this cause of action."  On October 10, 1991, Mitchell had filed in the first suit an opposition to defendants' motion for summary judgment supported by his affidavit and by two affidavits of O'Leary.  O'Leary's first affidavit attaches a copy of Allstate's written proposal for Herring which Allstate had furnished O'Leary in early March 1988 and which

_____

[1]In his complaint below Mitchell alleges he "was not given a copy of the complete insurance policy . . . until on or about September 4, 1990."

3

includes the Presumptive Disability Benefit language,[2] and a copy of O'Leary's March 14, 1988, letter to Mitchell, at Herring.  The March 14, 1988, letter states that the Allstate policy would include:

"1)  Total Disability for own occupation to age 65 . . .

2)  Presumptive Disability Benefit based on 50% loss of earnings test.

. . . ."

O'Leary's second affidavit states that "based on the oral and written representations of Allstate, I represented to my client [Herring] that the Allstate policy had a Presumptive Disability Benefit—if insured earns less than 50% of earnings because of disability, then the insured will be presumed as totally disabled." Mitchell's affidavit states:  "In 1990, I earned less than one third of the income that I earned in 1985."  It also states:

> "At the time the policy was sold to the Herring Marathon Group Inc. (in 1988) by Defendant Allstate, I was in charge of procuring such a policy for the employer.  The policy that I was told I was purchasing for the Herring Marathon Group Inc. was an 'own occupation' policy. This was explained to me as a policy that provided benefits if I was unable to perform any one of the materials [sic] duties of my occupation.  This was also verified to me by letter dated march [sic] 14, 1988 from J. Brock O'Leary to me."

The district court on January 6, 1993, rendered judgment in the first suit that Mitchell take nothing by his suit and that it

---

[2]O'Leary's affidavit in the present suit says that he "presented" this Allstate written proposal to Herring.

4

be dismissed on the merits. Mitchell filed a motion for new trial directed, *inter alia*, to his fraud claim. The district court denied the motion for new trial by order dated May 27, 1993, noting that "plaintiff claims that this Court improperly dismissed his claim for misrepresentation in the sale of an insurance policy." The court focused on the claim that Mitchell was told an "own occupation" policy meant he would be entitled to benefits if he was unable to perform any *one* of his duties and that this was verified in the O'Leary March 14, 1988, letter. The court noted that the letter was not inconsistent with the policy as regards "own occupation." It also noted that Mitchell's fraud pleadings did not meet the requirements of Fed. R. Civ. Pro. 9(b). Mitchell appealed, and this Court affirmed March 3, 1994.

The present suit was filed in May 1994 and was removed to the court below, the United States District Court for the Northern District of Texas.

Mitchell argues that the first suit is not *res judicata* because his fraud claim there related only to the "own occupation" matter, not to the Presumptive Disability issue. We are not persuaded. In the first place, the Presumptive Disability issue was plainly raised by O'Leary's affidavits that Mitchell filed in opposition to the defendants' summary judgment motion in the first suit, as well as by Mitchell's affidavit there that he relied on the March 14, 1988, letter and that his earnings were less than a

third of what they had been. In the present suit, Mitchell has filed one or more affidavits stating that he realized Allstate had committed fraud respecting the Presumptive Disability matter when on September 29, 1991, he read the Allstate proposal for Herring which he got from O'Leary,[3] that "since June 23, 1989 . . . I have been unable to perform work providing me with 50% or more of my pre-disability basic monthly earnings . . . in fact, I have earned less than 33% of my basic monthly earnings," that he relied on the O'Leary March 14, 1988, letter in believing that the policy would include a Presumptive Disability Benefit based on a 50% loss of earnings test, and that Herring would not have purchased the policy had it not been represented by the March 14 letter to include *both* a Presumptive Disability Benefit and an "own occupation" provision. Moreover, in his amended (and final) complaint in the present case, Mitchell expressly characterizes his prior suit as having included a claim for fraud based on the policy's not including the provision for Presumptive Disability based on 50% loss of earnings.[4]

---

[3]As the district court in the present action pointed out, there is no allegation or evidence that Allstate's proposal was not always readily available to Mitchell through O'Leary.

[4]The amended complaint alleges that in the first suit:

"Plaintiff asserted a cause of action for Allstate's fraud and misrepresentation of the actual benefits to be conferred under the insurance policy to induce Plaintiff's employer to purchase the insurance policy which became, when issued, the subject ERISA plan. Specifically, the insurance policy was to provide 'presumptive disability' coverage to Plaintiff, in particular a loss of fifty percent or more in earnings

6

Finally, on appeal of the dismissal of the first suit to this Court, Mitchell specifically argued that the district court erred by dismissing his claim of fraud against Allstate on the basis that Allstate had represented in its proposal that its policy would contain a provision that a loss of fifty percent or more in earning constitutes total disability but did not include any such provision in the policy when it was issued.

However, even if Mitchell's first suit had raised only the fraud claim that Allstate did not include in its policy as issued the sort of "own occupation" provision he and Herring had been informed by Allstate, through O'Leary, that it would contain, nevertheless this would not suffice to avoid *res judicata*. In determining whether the prior federal court judgment was on the same cause of action for *res judicata* purposes, this Court follows a transactional test which focuses on whether the two suits arise from "the same nucleus of operative facts." *Matter of Howe*, 913 F.3d 1138, 1144 (5th Cir. 1996). "Res judicata 'bars all claims that were *or could have been* advanced in support of the cause of action on the occasion of its former adjudication, . . . not merely those that were adjudicated." *Id*. *See also Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th Cir. 1983); *Hogue v. Royce City*, 939 F.2d 1249, 1252 (5th Cir. 1991). Accordingly, any failure by Mitchell to specifically plead in the prior suit Allstate's failure

would deem an employee automatically totally disabled."

to include in the policy the Presumptive Disability provision which its proposal represented would be included, and any failure by the district court in the first suit to specifically address or rule on that particular matter, is simply irrelevant to *res judicata* (as distinguished from collateral estoppel), because the district court in the first suit rendered judgment that Mitchell take nothing by his entire suit, and the fraud claim respecting the Presumptive Disability provision was one which could have been advanced in that suit. Here both the first suit and the present suit relate to the same transaction and nucleus of operative facts, namely Allstate's alleged fraud in representing by its proposal for Herring delivered to O'Leary, and O'Leary's consequent representations to Mitchell in respect thereto (principally the March 14, 1988, letter), as to what would be in the 1988 policy, when the policy as issued did not contain the provisions as represented, all to the prejudice of Mitchell's single disability claim.

Nor can Mitchell avoid *res judicata* by claiming that Allstate and Metropolitan stonewalled or lied in response to discovery in the first suit. In the first place, Mitchell, as his affidavit in this suit reflects, by September 1991 at the latest, knew and was able to prove the contents of the Allstate proposal to Herring including its Presumptive Disability provision, that it had been authored by Allstate and furnished to O'Leary, that O'Leary had informed him and Herring about it before the policy issued,

8

including by Herring's March 14, 1988, letter to him, that the policy did not contain such a provision, and that he met the test of the Presumptive Disability provisions of the proposal and of the March 14, 1988, letter; and by that time, at the latest, Mitchell believed Allstate had been guilty of fraud in this respect.[5] The first suit was not tried until over a year later, in December 1992. Mitchell's fraud claim was not rendered unavailable or unprovable in the first suit by any of the conduct or misconduct therein of Allstate or Metropolitan of which Mitchell now complains.[6] In the second place, even if Allstate or Metropolitan were guilty of misconduct in the first suit which clearly produced an unjust result therein but which was not rectifiable by appeal and which was such as to justify setting aside the final judgment therein, Mitchell's remedy would be to seek to set aside the judgment in the first case by a motion therein under Fed. R. Civ. Pro. 60(b) or (an even greater stretch) by an independent action in the Eastern District of Texas (which rendered the judgment in the first suit) to set aside that judgment; but Mitchell has not filed such a motion or action, and the present suit is in the Northern District

---

[5]Mitchell's amended (and final) complaint in the present suit alleges that "Plaintiff did not discover the fraud, misrepresentation and other actions of Defendant complained of in the Plaintiff's First Amended Complaint until September 29, 1991."

[6]What was fatal to Mitchell's fraud claim in the first suit was his failure to properly plead it and his singular emphasis on the "own occupation" matter to the near total exclusion of the Presumptive Disability matter.

of Texas, which is not the proper forum to set aside a judgment of the Eastern District of Texas. *See Russell v. Sunamerica Securities, Inc.*, 962 F.2d 1169, 1176-77 (5th Cir. 1992).[7]

The judgment of the district court is correct and is therefore

AFFIRMED.

---

[7]Even in the present action, Mitchell has not sought to set aside the judgment in the first suit. He merely seeks to "estop" Allstate from relying on it. That is simply an impermissible evasion of the rules of *res judicata*.